Gerald Grunsfeld, Esq.
Lazar, Grunsfeld Elnadav, LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
Telephone: (718) 947-7476
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IAN GALVEZ<br><br>                    Plaintiff,<br><br>        -against-<br><br>RAVINDRA MURALIDHAR CHITTINEEDI VENKATA A.K.A. RAVI CHITTINEEDI, and NAGASAI PAGADALA<br><br>                    Defendants, | Jury Trial Demanded<br><br>**COMPLAINT** |

Plaintiff, IAN GALVEZ, ("Mr. Galvez"), by his attorneys, as and for his Complaint against Defendants, alleges as follows:

## NATURE OF THE ACTION

1.     In this action, Plaintiff alleges that Defendants engaged in several racketeering schemes designed to defraud Plaintiff of his rightful share of profits and sales proceeds, with respect to two pharmacies that the parties jointly own/owned ("The Pharmacies").

2.     The first of the two pharmacies was located in Jamaica, New York, and operated under the corporate name of Asara, LLC (the "Asara Pharmacy").

3.     The second pharmacy is located in Hicksville, New York and operates under the corporate name of RSI Pharmacy, Inc. (the "RSI Pharmacy")

4. In addition, Plaintiff alleges that Defendants engaged in several racketeering schemes designed to defraud CVS Health, ("CVS"), which caused financial losses to CVS, and indirectly to Plaintiff.

5. In addition, Plaintiff alleges that Defendants engaged in several racketeering schemes designed to defraud New York State Department of Labor ("NYS"), which caused losses to NYS as well as to Plaintiff.

## THE PARTIES

6. Plaintiff, Ian Galvez is a private individual who resides in Brooklyn, New York.

7. Defendant RAVINDRA MURALIDHAR CHITTINEEDI VENKATA A.K.A. RAVI CHITTINEEDI ("Mr. Chittineedi") is a private individual and domiciliary of West Hempstead, New York.

8. At all times referenced herein Mr. Chittineedi has managed, operated and controlled The Pharmacies.

9. Defendant NAGASAI PAGADALA ("Mr. Pagadala") is a private individual and domiciliary of Clarksburg, Maryland.

10. At all times referenced herein Mr. Pagadala has actively conspired with, cooperated with, and assisted Mr. Chittineedi, in the various racketeering schemes which shall be set forth in more detail below.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over the RICO claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a), and over the related state-law claims under 28 U.S.C. § 1367.

12. This Court has jurisdiction over Defendant Mr. Chittineedi because he is domiciled in New York.

13. This Court has jurisdiction over Defendant Mr. Pagadala because he is a partial owner of The Pharmacies which are located in New York, because he entered into contracts relating to The Pharmacies with New York residents to supply goods in New York; because one

of the contracts have a New York choice of law provision; because he does business in New York; because he has committed torts in New York; and because he has committed torts outside New York that have caused harm in New York.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391.

### FACTUAL BACKGROUND

15.     In or around July 2013, Plaintiff's father (Amado Galvez) and Defendants became equal partners in the Asara Pharmacy.

16.     In or around July 2013, Amado Galvez and Defendant Mr. Pagadala signed an Operating Agreement governing the operation of Asara Pharmacy (the "Asara Operating Agreement").

17.     Although Mr. Chittineedi was a one-third owner of the Asara Pharmacy, at his request, Mr. Pagadala agreed not to reference Mr. Chittineedi's one third share in the Asara Operating Agreement, but instead listed his own share as comprising a 66.66% ownership of the Asara Pharmacy.

18.     Upon information and belief, Mr. Chittineedi did not want his one third ownership share to be referenced in the Asara Operating Agreement, because he was concerned about his immigration status.

19.     In or around 2014, Plaintiff's father died, leaving his one-third share in the Asara Pharmacy to Plaintiff.

20.     In or around May 2015, Plaintiff and Mr. Pagadala signed an Amendment to the Asara Operating Agreement, wherein they agreed that Mr. Galvez would assume his father's ownership share in the pharmacy and that the members of Asara Pharmacy would continue to be bound by the Asara Operating Agreement.

21.     Mr. Chittineedi did not sign the Amendment to the Asara Operating Agreement.

22.     Upon information and belief, Mr. Chittineedi also did not sign the Amendment because he was concerned about his immigration status.

23. From the time Plaintiff assumed his father's share of the Asara Pharmacy in 2015, until February of 2019, when Defendants sold the Asara Pharmacy, Defendant Mr. Chittineedi operated and controlled the Asara Pharmacy with the assistance of Mr. Pagadala.

24. From the time Plaintiff assumed his father's share of the Asara Pharmacy in 2015, until February of 2019, when Defendants sold the Asara Pharmacy, Plaintiff's partnership role was largely confined to a silent partner, however he did work as a pharmacist at Asara Pharmacy on approximately 15 occasions.

25. Plaintiff never had any involvement with the banking, accounting, billing, salaries, invoicing, or cash flow at the Asara Pharmacy.

26. Plaintiff never had any involvement with the wrongdoing at the Asara Pharmacy alleged herein, and never had any involvement in any other wrongdoing at the Asara Pharmacy.

27. From the time Plaintiff assumed his father's share of the Asara Pharmacy in 2015, until February of 2019, when Defendants elected to sell Asara Pharmacy, Plaintiff had no ability to direct or control the manner in which the Asara Pharmacy was run.

28. Pursuant to Paragraph 10.2(b) of the Asara Operating Agreement, all members were supposed to receive annual accountant-reviewed financial statements for the Asara Pharmacy.

29. Defendants, who operated and controlled the Asara Pharmacy, never provided such statements to Plaintiff.

30. Pursuant to Paragraph 6.1 and 7.3 of the Asara Operating Agreement, all members were supposed to share in the profits of the pharmacy in accordance with their ownership shares.

31. Defendants and Plaintiff each owned one third of the Asara Pharmacy.

32. Despite their equal ownerships, Mr. Pagadala paid himself a monthly profit-share payment of $4,500, whereas Plaintiff only received $3,500.

33. In addition, Defendants instructed Plaintiff to pay $1,000 every month to Mr. Chittineedi.

34. For at least the period between 2017 and 2018, Defendants conspired and cooperated so as to defraud CVS and their own customers, whereby they billed CVS for a more expensive brand of medication than they actually administered.

35. Plaintiff only learned of this fraudulent conduct when Defendants advised him that Asara Pharmacy was being audited by CVS Health.

36. Beginning in or around June 2018, until the time Defendants sold the Asara Pharmacy in February 2019, Defendants stopped paying Plaintiff a monthly payment because they advised him that the audit was negatively affecting the pharmacy's cash flow.

37. On July 3, 2019, NYS DOL sent a letter to Asara LLC alleging that Asara LLC had represented to NYS DOL (via its accountant) that:

   a. Mr. Chittineedi receives a monthly salary of $4,000 per month in cash.

   b. Asara employs twenty five pharmacists and pays them $360 per day, in cash.

38. The same letter alleges that:

   a. Asara's financial records evidenced unexplained and undocumented loans.

   b. NYS DOL's findings pointed to twenty-eight unreported salaries on which Asara LLC should have paid unemployment insurance contributions but failed to do so.

   c. NYS DOL alleged that Asara Pharmacy had deliberately failed to pay unemployment insurance contributions between 2016 and 2018.

   d. NYS DOL assessed a penalty against Asara LLC, in the amount of $5,414.

39. Upon information and belief, Defendants' claim that Asara LLC employed twenty eight pharmacists at a rate of $360/day, paid in cash, is false.

40. Upon information and belief, Defendants falsely claimed that Asara LLC employed twenty-eight pharmacists at a rate of $360/day, in order to create fictional expenses so as to defraud the IRS, NYS and Plaintiff.

41. Upon information and belief, Defendants falsely reported that Asara LLC made various loans in order to create fictional expenses so as to defraud the IRS, NYS and Plaintiff.

42. On or around February 28, 2019, Defendants decided to sell the Asara Pharmacy, and they advised Plaintiff the sale price was $270,000.

43. As per agreement between Defendants and the buyer, $50,000 of the purchase price was to be paid to Asara LLC, on or before September 28, 2019.

44. As per agreement between the Asara LLC members, the $50,000 would be split equally among the three partners upon receipt from the buyer.

45. To date, Plaintiff has not received his 1/3 share of the $50,000 payment.

46. Plaintiff has made several written inquiries to Defendants as to why he has not received his 1/3 share of the $50,000 payment.

47. To date, Defendants maintain they have not received the payment as yet by the Buyer, but have not explained what efforts if any they have made to follow up on this payment, and they have not advised Plaintiff when or if he will be receiving his share.

48. In addition, Plaintiff was never given any share of the $170,000 sale proceeds that was paid to Asara LLC at or around the closing.

49. In addition, Plaintiff was never provided an accounting by Defendants that explained what happened to the $170,000 sale proceeds that was paid to Asara LLC.

50. On or around September 15, 2016, Defendants and Plaintiff jointly purchased the RSI Pharmacy.

51. From the time Defendants and Plaintiff jointly purchased the RSI Pharmacy until the present, Defendant Mr. Chittineedi operated and controlled the RSI Pharmacy with the assistance of Mr. Pagadala.

52. From the time Defendants and Plaintiff jointly purchased the RSI Pharmacy until the present, Plaintiff acted solely as a silent partner in the RSI Pharmacy.

53. From the time Defendants and Plaintiff jointly purchased the RSI Pharmacy until the present, Plaintiff was never physically present at the pharmacy, and had no ability to direct or control the manner in which the RSI pharmacy was run.

54. Defendants and Plaintiff were each supposed to make a $66,000 capital contribution so as to provide the purchase funds for the RSI Pharmacy.

55. Plaintiff's $66,000 contribution was provided on his behalf by his aunt.

56. Plaintiff does not know if Defendants provided their requisite contributions as they never provided him with any evidence that they paid their contributions to RSI.

57. The $66,000 contributions were supposed to have been repaid to the three partners from the RSI Pharmacy profits.

58. To date, Defendants have not repaid any of Plaintiff's $66,000 contribution to Plaintiff or to his aunt.

59. In addition, notwithstanding that Plaintiff is a 30% owner of RSI, in the more than three years that Defendants have owned/operated/controlled the RSI Pharmacy, they have never paid Plaintiff a penny in profit-share payments.

60. Defendants told Plaintiff that the reason they have not distributed any profits from RSI Pharmacy is because the RSI Pharmacy has never made any profit.

61. Upon information and belief, RSI Pharmacy has in fact been profitable and that Defendants have conspired and cooperated to hide said profits from Plaintiff and government agencies.

62. In addition, notwithstanding that Plaintiff is a 30% owner of RSI, in the more than three years that Defendants have owned/operated/controlled the RSI Pharmacy, the only financial information pertaining RSI Pharmacy that they have made available to Plaintiff is some of its tax returns and bank statements.

63. In 2019, Plaintiff requested the following documents from Defendants pertaining to the RSI Pharmacy:

- Credit card statements from date of acquisition to present

- Medicaid/Medicare records (claims/payment etc) from date of acquisition to present

- Insurance records (claims/payment etc) from date of acquisition to present

- A profit/loss statement from date of acquisition to present

- All invoices/purchase orders from date of acquisition to present

- Cash register records from date of acquisition to present

- Inventory reports from date of acquisition to present

64. Defendants responded by advising Plaintiff to request same from the accountant for RSI Pharmacy.

65. Plaintiff duly requested these documents from the accountant but did not receive a response.

66. Defendants' conduct as set forth above was egregious and shocks the conscience.

## FIRST CAUSE OF ACTION

*(Violation of 18 U.S.C. § 1962 (RICO))*

67. Plaintiff repeats and re-alleges the prior allegations in the Complaint as if fully set forth herein.

68. Defendants collaborated, conspired and cooperated together for the purpose of defrauding Plaintiff, CVS Health, and various State and Federal agencies, from 2015 to present and continuing on a daily basis.

69. Upon information and belief, such fraudulent conduct pertaining to The Pharmacies includes but is not limited to:

- Failing to report/document cash received at The Pharmacies so as to minimize the reported revenue for The Pharmacies, so as to minimize and/or eliminate the need to profit-share with Plaintiff, and so as to minimize and/or eliminate the need to pay State and Federal taxes on the income generated at The Pharmacies.

- Under-reporting NYS unemployment insurance obligations.

- Fabricating and/or exaggerating employee salaries so as to minimize and/or eliminate the need to profit-share with Plaintiff, and so as to minimize and/or eliminate the need to pay State and Federal taxes on the income generated at The Pharmacies.

- Fabricating and/or exaggerating loans made by The Pharmacies so as to minimize and/or eliminate the need to profit-share with Plaintiff, and so as to minimize and/or eliminate the need to pay State and Federal taxes on the income generated at The Pharmacies.

- Defrauding CVS Health by billing for more expensive medication than they dispensed.

- Defrauding Plaintiff by failing to pay him his fair share of profits.

- Defrauding Plaintiff by failing to pay him his fair share of the monies received from the sale of the Asara Pharmacy.

70. The association-in-fact of Defendants constitutes an enterprise engaged in and affecting interstate and foreign commerce within the meaning of 18 U.S.C. §§ 1961-1962.

71. This enterprise was continuous in that it lasted for more than two years, it had an ascertainable structure, and it acted in ways distinct from the predicate offenses that Plaintiff alleges. The enterprise was continuous for the additional reason that the predicate acts were a regular way of conducting Defendants' ongoing business and of conducting or participating in the ongoing RICO enterprise.

72. The purpose of the enterprise was to engage in activities that would minimize or eliminate the need to pay State and Federal taxes and to engage in activities that would minimize or eliminate the need to pay Plaintiff his fair share of profits from The Pharmacies and his far share in the moneys obtained from the sale of the Asara Pharmacy.

73. The Defendants' racketeering acts were related to one another and formed a pattern of racketeering activity: (a) they were in furtherance of a common goal to defraud Plaintiff, Governmental agencies and insurance companies, so as to unjustly enrich themselves; (b) they used similar methods to perpetrate the fraud such as failing to report/document income and payment obligations and fabricating/exaggerating expenses; (c) they involved the same participants; and (d) they involved similarly situated victims.

74. Defendants committed numerous predicate acts of racketeering activity in connection with the enterprise within the meaning of 18 U.S.C. § 1961(1), including without limitation, numerous and repeated violations of 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C.A. § 1961, 18 U.S.C.A. § 1962, and 18 U.S.C. § 371 (relating to tax fraud).

75. Upon information and belief, as more fully set forth in the "Factual Background" portion of this Complaint, Defendants and/or their agents used the US postal service and/or other commercial interstate carriers such as Fedex and UPS, to send fraudulent communications to NYS/IRS pertaining to their income/expenses/tax and unemployment insurance obligations, and to CVS, regarding their requests for payment inter alia.

76. Upon information and belief, as more fully set forth in the "Factual Background" portion of this Complaint, Defendants and/or their agents used the internet to send fraudulent e-mails and/or other communications via the internet, to Plaintiff regarding the financial affairs of The Pharmacies, and to NYS/IRS regarding the revenues/expenses/tax obligations of The Pharmacies, and to CVS regarding their requests for payment inter alia.

77. Operating through the enterprise, Defendants engaged in a pattern of racketeering activity, beginning no later than 2015, and continuing to date.

78. Each of the Defendants is a "person" within the meaning of 18 U.S.C. §1961(3), and is separate from the enterprise.

79. The amount of Defendants' fraudulent enrichment is unknown at this time but is believed to amount to several hundred thousand dollars.

80. Defendants' conduct as set forth above was egregious and shocks the conscience.

## SECOND CAUSE OF ACTION

### (FRAUD)

81. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

82. Defendants fraudulently represented to Plaintiff that they would provide him with his fair share of The Pharmacies' profits.

83. Defendants fraudulently represented to Plaintiff that they would provide him with his fair share of any moneys realized from the sale of the Asara Pharmacy.

84. Defendants fraudulently represented to Plaintiff that they would provide him with an annual accounting with respect to the financial affairs of The Pharmacies.

85. Defendants fraudulently represented to Plaintiff that they were paying him his fair share of profits/distributions from The Pharmacies.

86. Defendants fraudulently represented to Plaintiff that they would run The Pharmacies in compliance with State and Federal law.

87. Defendants knew these representations were false and fraudulent at the time they made them and at all relevant times herein.

88. In reasonable reliance on each one of these statements, Plaintiff agreed to become a partner in the two Pharmacies.

89. In reasonable reliance on each one of these statements, Plaintiff agreed to remain a partner in the two Pharmacies.

90. In reasonable reliance on each one of these statements, Plaintiff agreed to provide capital contributions to The Pharmacies, both directly and via loans extended from his aunt.

91. As set forth above, Defendants defrauded Plaintiff by fraudulently misrepresenting The Pharmacies' revenue/expenses/loans/billing, prescription information and unemployment insurance obligations; by fraudulently failing to pay him his fair share of profits; by failing to pay Plaintiff his fair share of any moneys realized from the sale of the Asara

Pharmacy; and by failing to repay Plaintiff's aunt the $66,000 she loaned to the RSI Pharmacy on Plaintiff's behalf.

92. As set forth above, Defendants defrauded NYS/CVS, resulting in NYS/CVS auditing The Pharmacies and assessing penalties against The Pharmacies

93. The aforementioned fraud has resulted in losses to Plaintiff believed to amount to several hundred thousand dollars.

94. Defendants' conduct as set forth above was egregious and shocks the conscience.

### THIRD CAUSE OF ACTION

(*BREACH OF CONTRACT*)

95. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

96. In or around May 2015, Plaintiff and Mr. Pagadala signed an Amendment to the Asara Pharmacy Operating Agreement, wherein they agreed that Mr. Galvez would assume his father's ownership share in the pharmacy and that they would both be bound by the original Operating Agreement.

97. Plaintiff and Mr. Chittineedi orally contracted in or around May 2015, that they would both be bound by the original Asara Operating Agreement.

98. Pursuant to Paragraph 5.3 of the Asara Operating Agreement, all members of Asara Pharmacy agreed to indemnify each other for any losses caused by fraudulent or grossly negligent conduct on the part of a member.

99. Pursuant to Paragraphs 6.3 and 7.1 of the Asara Operating Agreement, all members were supposed to receive profits from the Asara Pharmacy in accordance with their ownership share.

100. Pursuant to Paragraph 10.2(b) of the Asara Operating Agreement, all members were supposed to receive annual accountant-reviewed financial statements for ASARA Pharmacy.

101.  Pursuant to Paragraph 13.9 of the Asara Operating Agreement, all members agreed to comply with the law with respect to all activities performed on behalf of the Asara Pharmacy.

102.  Plaintiff and Defendants orally contracted that except for limited exceptions, they would be bound by the same obligations with respect to the RSI Pharmacy as set forth in the Asara Operating Agreement.

103.  Defendants deliberately and materially breached the aforementioned written and oral contracts as set forth above and below.

104.  Defendants never provided Plaintiff the financial statements pertaining to the The Pharmacies they were contractually obligated to provide to Plaintiff.

105.  Upon information and belief, Defendants fabricated/exaggerated expenses/salaries/loans and other costs so as to reduce/eliminate the documented profits at The Pharmacies.

106.  Defendants did not pay Plaintiff the appropriate percentage of the profits received from the running and/or sale of The Pharmacies.

107.  Defendants did not indemnify Plaintiff with respect to losses The Pharmacies incurred due to their fraud and gross negligence.

108.  Defendants did not comply with the law in their operating of The Pharmacies.

109.  The aforementioned breaches of written and oral contracts caused Plaintiff losses believed to total several hundred thousand dollars.

## FOURTH CLAIM FOR RELIEF

(*UNJUST ENRICHMENT*)

110.  Plaintiff repeats and re-allege the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

111. Upon information and belief, Defendants fabricated/exaggerated expenses/salaries/loans and other costs so as to reduce/eliminate the documented profits at The Pharmacies, and so as to unjustly enrich themselves at Plaintiff's expense.

112. Defendants did not pay Plaintiff the appropriate percentage of the profits received from the running and/or sale of The Pharmacies, so as to unjustly enrich themselves at Plaintiff's expense.

113. Plaintiff suffered losses believed to total several hundred thousand dollars as a result of Defendants' unjust enrichment.

114. It is against equity and good conscience to allow Defendants to keep the moneys they fraudulently withheld from Plaintiff.

## FIFTH CLAIM FOR RELIEF

*(GROSS NEGLIGENCE)*

115. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

116. Defendants owed Plaintiff a duty of care to operate The Pharmacies without committing gross negligence in the process.

117. If Defendants prove that the audits by NYS and CVS did not take place as a result of fraudulent conduct on the part of Defendants, Plaintiff will allege in the alternative, that the audits were a result of Defendants breaching their duty to Plaintiff to operate The Pharmacies without gross negligence.

118. Plaintiff suffered losses in an amount to be proven at trial, as a result of Defendants' gross negligence.

## SIXTH CLAIM FOR RELIEF

*(BREACH OF FIDUCIARY DUTY)*

119. Plaintiff repeats and re-allege the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

120. As members and shareholders of The Pharmacies, Defendants had a fiduciary relationship with Plaintiff.

121. Defendants breached their fiduciary duty to Plaintiff by engaging in fraud and gross negligence at Plaintiff's expense.

122. Upon information and belief, Defendants fabricated/exaggerated expenses/salaries/loans and other costs so as to reduce/eliminate the documented profits at The Pharmacies, so as to unjustly enrich themselves at Plaintiff's expense.

123. Defendants did not pay Plaintiff the appropriate percentage of the profits received from the running and/or sale of The Pharmacies, so as to unjustly enrich themselves at Plaintiff's expense.

124. Defendants fraudulent and/or grossly negligent conduct caused NYS and CVS to audit The Pharmacies and assess penalties and or surcharges against The Pharmacies.

125. As a result of Defendants' breach of fiduciary duty, Plaintiff suffered losses believed to total several hundred thousand dollars.

126. Defendants' conduct as set forth above was egregious and shocks the conscience.

127. Plaintiff is also entitled to punitive damages in that the Defendants' conduct was willful, wanton and malicious.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. An Order requiring Defendants to provide Plaintiff with a full and complete accounting of the financial affairs of the operation and sale of The Pharmacies for the period Defendants controlled and operated The Pharmacies, and on a continuing basis hereon forward, for the duration of Defendants' operation and control of the RSI Pharmacy;

2. Treble damages for any losses Defendants caused Plaintiff as a result of their fraudulent conduct;

3. Punitive damages in an amount to be determined at trial;

4. Standard damages in an amount to be determined at trial;

5. Attorneys' fees and costs;

6. Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
October 23, 2019

Lazar, Grunsfeld Elnadav, LLP


By: _____/GG/_____
Gerald Grunsfeld
Attorneys for Plaintiff
1795 Coney Island Avenue
Brooklyn, NY 11230
(718) 947-7476
Gerry@LGELaw.com